IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DELAWARE LIFE INSURANCE COMPANY OF NEW YORK,<br><br>*Plaintiff*,<br><br>v.<br><br>RETIREMENT VALUE, LLC,<br><br>*Defendant*. | :<br>:<br>:<br>:<br>:<br>:   C.A. No. 5:22-cv-26<br>:<br>:<br>:<br>:<br>: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Delaware Life Insurance Company of New York ("Delaware Life"), by and through its undersigned counsel, hereby files and asserts this Complaint against Defendant, Retirement Value, LLC, and alleges as follows:

**PARTIES**

1. Delaware Life is a life insurance company organized and existing under the laws of the State of New York, with its principal place of business located at Tower 49, 12 East 49th Street, New York, New York. Delaware Life is a citizen of the State of New York.

2. Upon information and belief, Defendant Retirement Value, LLC is a Texas limited liability company with all of its members being residents and citizens of Comal County, Texas and none of its members residing in the State of New York. Retirement Value, LLC is a citizen of the State of Texas and a resident of this judicial district. Retirement Value, LLC, may be served at c/o Eduardo S. Espinosa, as Receiver, Dykema Cox Smith, 1717 Main Street, Suite 4200, Dallas, TX 75201.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy is $2 million, which exceeds the jurisdictional requirement of exceeding the sum of $75,000 exclusive of interest and costs.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the Defendant resides in this judicial district and a substantial part of the events giving rise to Delaware Life's claim occurred in this judicial district.

5. Upon information and belief, the owner of Retirement Value, LLC is an individual named Richard Gray, who is believed to reside at 3606 Comal Springs, Canyon Lake in Comal County, Texas, which is located within this judicial district. Upon information and belief, in or around May of 2010, Eduardo S. Espinosa was appointed as the Receiver for Retirement Value, LLC in the Legal Action entitled *State of Texas v. Retirement Value, LLC, et al.*, Cause No. D-1-GV-10-000454 in the District Court of Travis County Texas, 126th Judicial District, with is located within this judicial district. Upon information and belief, orders were entered in the Receivership Action which appointed Mr. Espinosa as Receiver of Retirement Value, LLC's assets and gave him full legal control over its assets.

## FACTUAL BACKGROUND

6. On August 15, 2005, Sun Life Insurance and Annuity Company of New York ("SLNY") issued policy number 040000495 in the face amount of $1,500,000 insuring the life of Lilly Segal with Herman Segal (Lilly Segal's son) as the initial owner and beneficiary of the Policy.

7. On August 15, 2005, SLNY issued policy number 040000652 in the face amount of $500,000 insuring the life of Lilly Segal, with Herman Segal (Lilly Segal's son) as the initial

owner and beneficiary of the Policy. The $1,500,000 and $500,000 SLNY policies insuring the life of Lilly Segal will hereinafter be referred to collectively as the "Segal Policies."

8. Upon information and belief, in or around May of 2010, Eduardo S. Espinosa (the "Receiver") was appointed as the Receiver for Retirement Value, LLC in the Legal Action entitled *State of Texas v. Retirement Value, LLC, et al.*, Cause No. D-1-GV-10-000454 in the District Court of Travis County Texas, 126th Judicial District (the "Receivership Action"). Upon information and belief, orders were entered in the Receivership Action which appointed Mr. Espinosa as Receiver of Retirement Value, LLC's assets and gave him full legal control over such assets.

9. In 2012, Retirement Value, LLC became the owner and beneficiary of the Segal Policies.

10. In 2013, SLNY became Delaware Life Insurance Company of New York ("Delaware Life")

11. Section 9 of the Segal Policies provides that "[t]he Policy Proceeds will be paid in a lump sum upon receipt of Due Proof of the Insured's Death," with "Due Proof" defined as "[s]uch evidence as we may reasonably require in order to establish that Policy Proceeds or any other benefits are due and payable."

12. On or about September 25, 2019, Sun Life Assurance Company of Canada ("Sun Life") as administrator of the Segal Policies on behalf of Delaware Life received telephonic notice that Lilly Segal had supposedly died on June 15, 2019.

13. On or about October 9, 2020, the Receiver sent Sun Life a partial death claim submission on the Segal Policies, which included a Death Claim Submission form signed by the Receiver on behalf of Retirement Value, LLC but did not include a Death Certificate evidencing the death of Lilly Segal.

14. In multiple correspondence and communications starting on September 27, 2019 and continuing through August 2021, Sun Life repeatedly informed and reminded the Receiver that a Death Certificate for Lilly Segal was required for the death claim to be processed.

15. On or about May 21, 2021, the Receiver contacted Sun Life's outside legal counsel, Charles J. Vinicombe at the law firm of Cozen O'Conner ("Sun Life's Counsel"), regarding the status of the death claim.

16. On or about July 9, 2021, the Receiver maintained to Sun Life's Counsel that Lilly Segal had supposedly undergone a name change (changing her name on April 13, 2017 to Sprinta Berger) and that the Receiver was in possession of a death certificate for Lilly Segal under her new name (Sprinta Berger). Sun Life was never notified of the name change on or about the time it purportedly occurred.

17. The Receiver thereafter provided Sun Life and Sun Life's Counsel with a copy of a Death Certificate for Sprinta Berger issued by the New York Department of Health and Mental Hygiene which purportedly provided Sprinta Berger's (i) social security number; (ii) date of birth; (iii) date of death; and (iv) residence address, at the time of her death, of 24 Fairway Drive in Green Brook, New Jersey.

18. On or about July 12, 2021, Sun Life's Counsel informed the Receiver that there were several discrepancies between the insurer's records for Lilly Segal and the Death Certificate for Sprinta Berger, which raised questions as to whether Lilly Segal was, in fact, Sprinta Berger and whether Lilly Segal was deceased. These discrepancies included (i) approximately a two year and two month difference in the stated birth dates for Lilly Segal and Sprinta Berger; and (ii) different stated social security numbers for Lilly Segal and Sprinta Berger.

19. In response, on or about July 14, 2021, the Receiver informed Sun Life's Counsel that "[w]e recognize that there are dots that need connecting, largely due to Herman [Segal's] attempt to hide his mother's demise."

20. On or about September 14, 2021, the Receiver sent Sun Life and Sun Life's Counsel "supplemental information regarding Retirement Value's claim for death benefits" on the Segal Policies. The supplemental information included (i) a Certificate of Naturalization for Lenka (also known as Lilly according to the Receiver) Segal; (ii) a Social Security Card for Lilly Segal; (iii) a New York Driver's License for Lilly Segal; (iv) a February 24, 2017 Verified Complaint for a Name Change purportedly to change Lilly Segal's name to Sprinta Berger; and (iv) an April 25, 2017 Final Judgment for a name change for Sprinta Berger.

21. Based upon its review of the aforementioned documentation, Sun Life has concluded that, although it appears that an individual named Sprinta Berger has died, there are still unresolved, significant inconsistencies in the aforementioned documentation which call into question whether Sprinta Berger was, in fact, Lilly Segal, whether Lilly Segal is deceased, and therefore whether a death benefit is payable on the Segal Policies.

22. These discrepancies include the following:

   (a) the application for the Segal Policies, the Driver's License for Lilly Segal, and the Certificate of Naturalization for Lenka Segal provide a date of birth that is two years and two months different than the date of birth provided in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger;

   (b) the application for the Segal Policies and the Social Security Card for Lilly Segal provide a social security number that is different than that in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger; and

   (c) the notification of death provided to Sun Life for Lilly Segal stated that Ms. Segal died on June 15, 2019, but the Sprinta Berger Death Certificate has a date of death of November 7, 2018.

23. Sun Life's investigation also reveals additional inconsistencies, which further call into question whether Sprinta Berger was, in fact, Lilly Segal. In this regard, Sun Life's investigation into the residence address of 24 Fairway Drive, Green Brook, New Jersey—included in the Sprinta Berger Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger—has not revealed any connection between Lilly Segal or Sprinta Berger or anyone with those surnames with the stated residence address. Also, Sun Life's research reveals that the social security number—provided in Death Certificate, Verified Complaint for Name Change, and Final Judgment for the Name Change for Sprinta Berger—belongs to an individual who is reportedly alive and residing in Florida, and who has no obvious relationship to Lilly Segal.

24. The Receiver has also acknowledged, in writing, that multiple discrepancies exist and that his proof that Sprinta Berger was Lilly Segal and that Lilly Segal is deceased may be insufficient in that:

> (a) in his aforementioned September 14, 2021 correspondence to Sun Life, the Receiver stated that "we were unable to locate any record of Lilly Segal or Sprinta Berger using the social security number and/or date of birth provided for in the Death Certificate"; and
>
> (b) in an August 18, 2021 Motion filed in the Receivership Action, the Receiver stated that (i) he hired a private investigator, but the private investigator was "unable to determine definitively whether LS [Lilly Segal] was dead or alive and, if dead, where she died"; (ii) "[w]hile the publicly available information— the death certificate and announcement of name change from LS [Lilly Segal] to SB [Sprinta Berger]—is significant, it is likely not enough to satisfy insurers. For example, the Receiver is still faced with the task of establishing that the LS [Lilly Segal] who changed her name to SB [Sprinta Berger] in New Jersey is the same person as the insured . . . . "

25. In addition, in connection with another policy issued on the life of Lilly Segal (and not owned by Retirement Value, LLC), a Delaware Life reinsurer has declined to pay an amount owed for that policy, citing insufficient proof of Lilly Segal's death.

## COUNT I

## DECLARATORY JUDGMENT

26. Delaware Life hereby incorporates by reference each and every averment contained in the preceding paragraphs as if the same were set forth herein at length.

27. There is an actual controversy, within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a), between Delaware Life and the Receiver regarding whether the Receiver has provided sufficient proof that a death has occurred on the Segal Policies as required under the aforementioned terms of the Policies and whether death benefits are consequently payable under the Segal Policies.

28. Accordingly, Delaware Life seeks, and is entitled to, a declaratory judgment declaring whether the Receiver has provided sufficient proof that a death has occurred on the Segal Policies as required under the terms of the Segal Policies and whether death benefits are consequently payable under the Segal Policies.

## **PRAYER FOR RELIEF**

WHEREFORE, Delaware Life respectfully requests the entry of an Order by this Court as follows:

A. Declaring whether the Receiver has provided sufficient proof that a death has occurred on the Segal Policies and whether death benefits are consequently payable under the Segal Policies; and

B. Awarding Delaware Life such further relief as this Court deems appropriate.

Respectfully submitted,

*/s/ Gregory S. Hudson*
Gregory S. Hudson
Attorney-In-Charge

State Bar No. 00790929
E-mail: ghudson@cozen.com
COZEN O'CONNOR
One Houston Center
1221 McKinney
Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3910
Telecopier: (832) 201-8807

**ATTORNEYS FOR PLAINTIFF
DELAWARE LIFE INSURANCE
COMPANY OF NEW YORK**